IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CARTRELL R. SMITH SR.,
JASON LUTZ, and ROBERT ORGAN

      Plaintiffs,

vs.                                              No. CV 16-01201 MCA/GJF

CORRECTIONS CORP. OF AMERICA.
TORRANCE COUNTY, and
CHAD MILLER,

      Defendants.

## MEMORANDUM OPINION AND ORDER DISMISSING CLAIMS OF PLAINTIFFS SMITH AND LUTZ

THIS MATTER is before the Court under 28 U.S.C. § § 1915A and 1915(e)(2)(B) and Fed. R. Civ. P. 12(b)(6) and 41(b) on the Complaint for Violation of Civil Rights filed by Plaintiffs Cartrell R. Smith, Sr. and Jason Lutz (Doc. 1) and amended Complaint for Violation of Civil Rights filed by Plaintiff Jason Lutz (Doc. 14). The Court will dismiss the claims of Plaintiff Jason Lutz for failure to comply with a Court Order and failure to prosecute. The Court will dismiss Plaintiff Cartrell Smith's claims for failure to state a claim for relief and for failure to comply with a Court Order.

### I. PROCEDURAL BACKGROUND

The Complaint for Violation of Civil Rights ("Complaint") was filed on October 31, 2016 by pro se Plaintiffs Cartrell R. Smith, Sr., Jason Lutz, and Robert Organ. (Doc. 1). The Complaint asserts violation of Plaintiffs' civil rights in connection with strip searches conducted at the Torrance County Detention Facility. Although the Complaint is signed by all three Plaintiffs, it appears to have been drafted and submitted by Plaintiff Cartrell Smith. (See, e.g., Doc. 1 at 9-10, 16, 22-23, 24). The claims of Plaintiff Robert Organ were previously dismissed

1

under Fed. R. Civ. P. 41(b) for failure to comply with a Court Order and failure to prosecute on October 27, 2017. (Doc. 43).

Plaintiff Lutz filed an amended Complaint on December 21, 2016 (Doc. 14). On November 14, 2017, the Court entered an Order noting that mailings to Plaintiff Jason Lutz were being returned to the Court. (Doc. 53). The Order directed Plaintiff Lutz to notify the Court of any change of address or otherwise show cause why his claims should not be dismissed. The Order was mailed to his address of record at the Torrance County Correctional Facility. Plaintiff Lutz's response to the show-cause Order was due no later than December 5, 2017. (Doc. 53).

The copy of the November 14, 2017 Order mailed to Plaintiff Lutz was also returned to the Court as undeliverable. (Doc. 55). The Court, *sua sponte,* undertook a search of the New Mexico correctional system online records, which indicated Plaintiff Lutz was now incarcerated at the Southern New Mexico Correctional Facility. As indicated on the Court's docket, the Court re-mailed a copy of the November 14, 2017 Order to Plaintiff Lutz at the Southern New Mexico Correctional Facility address on November 21, 2017. Plaintiff Lutz has never responded to the November 14, 2017 Order.

Mailings to Plaintiff Cartrell Smith were also returned to the Court as undeliverable. On November 14, 2017, the Court entered an Order to Show Cause, directing Plaintiff Smith to provide the Court with a new address or show cause why his claims should not be dismissed within 21 days of entry of the Order. (Doc. 52). The Order notified Smith that, if he failed to respond or show cause within 21 days, the case could be dismissed without further notice. The November 14, 2017 Order was mailed to Smith at his address of record at the Torrance County Detention Center. (Doc. 52).

The deadline for Smith to respond to the Order was December 5, 2017. Plaintiff Smith did submit a notice of change of address on November 21, 2017. (Doc. 56). However, mail sent to Smith's alleged new address was also returned as undeliverable. (Doc. 58, 60). The Court's docket reflects that Plaintiff Smith left a message on the Court's inmate voicemail system on December 8, 2017, claiming to want to update his address. Smith then filed a notice of change of address on December 15, 2017. (Doc. 61). Both the message on the Court's inmate voicemail system and the December 15, 2017 notice were submitted after the December 5, 2017 deadline under the Court's Order to Show Cause.

## II. THE CLAIMS OF JASON LUTZ WILL BE DISMISSED FOR FAILURE TO COMPLY WITH A COURT ORDER AND FAILURE TO PROSECUTE

On November 14, 2017, the Court entered an Order noting that the record reflects that certain mailings to Plaintiff Jason Lutz were returned as undelivered (*see* Doc. 45, 46, 53). The Court stated that "[i]t appears that Plaintiff has been transferred or released from custody without advising the Court of his new address, as required by D.N.M. LR-Civ. 83.6, thus severing contact with the Court." (Doc. 53). The Order required Plaintiff Lutz to show cause why this action should not be dismissed. *See Bradenburg v. Beaman,* 632 F.2d 120, 122 (10th Cir. 1980) ("It is incumbent on litigants, even those proceeding pro se, to follow the federal rules of procedure. . . The same is true of simple, nonburdensome local rules . . . ." (citation omitted)). The Order notified Plaintiff Lutz that failure to comply with the Order may result in dismissal without further notice. The Court's Order was also returned as undelivered. (Doc. 55).

Although not obligated to do so, the Court undertook to find a new address for Plaintiff Lutz. Upon locating the Southern New Mexico Correctional Facility address, the Court mailed a copy of the Order to that address. That mailing was not returned to the Court. Plaintiff Lutz, however, did not respond to the November 14, 2017 Order.

Plaintiff Lutz has failed to notify the Clerk in writing of his current address, show cause why the action should not be dismissed, respond to the Court's Order to Show Cause, or otherwise communicate with the Court. The Court may dismiss an action under Fed. R. Civ. P. 41(b) for failure to prosecute, to comply with the rules of civil procedure, or to comply with court orders. *See Olsen v. Mapes,* 333 F.3d 1199, 1204, n. 3 (10th Cir. 2003). Therefore, the Court will dismiss all claims by Plaintiff Jason Lutz for failure to comply with the Court's Order and for failure to prosecute this proceeding. Fed. R. Civ. P. 41(b).

### III. THE CLAIMS OF PLAINTIFF SMITH WILL BE DISMISSED FOR FAILURE TO STATE A CLAIM AND TO COMPLY WITH A COURT ORDER

Plaintiff Cartrell Smith is proceeding pro se and *in forma pauperis* on civil rights claims under 42 U.S.C. § 1983. The Court has the discretion to dismiss an *in forma pauperis* complaint *sua sponte* for failure to state a claim upon which relief may be granted under either Fed. R. Civ. P. 12(b)(6) or 28 U.S.C. § 1915(e)(2)(B). Under Fed. R. Civ. P. 12(b)(6) the Court must accept all well-pled factual allegations, but not conclusory, unsupported allegations, and may not consider matters outside the pleading. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Dunn v. White,* 880 F.2d 1188, 1190 (10th Cir. 1989). The court may dismiss a complaint under rule 12(b)(6) for failure to state a claim if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged." *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir. 1991) (quoting *McKinney v. Oklahoma Dep't of Human Services,* 925 F.2d 363, 365 (10th Cir. 1991)). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. A claim should be dismissed where it is legally or factually insufficient to state a plausible claim for relief. *Twombly*, 550 U.S. at 570.

Under § 1915(e)(2)(B) the Court may dismiss the complaint at any time if the Court determines the action fails to state a claim for relief or is frivolous or malicious. 28 U.S.C. §

915(e)(2)(B)(2). The authority granted by § 1915 permits the court the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neitzke v. Williams,* 490 U.S. 319, 327 (1989). *See also Hall v. Bellmon,* 935 F.2d at 1109. The authority to "pierce the veil of the complaint's factual allegations" means that a court is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations. *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992). The Court is not required to accept the truth of the plaintiff's allegations but, instead, may go beyond the pleadings and consider any other materials filed by the parties, as well as court proceedings subject to judicial notice. *Denton,* 504 U.S. at 32-33.

In reviewing a pro se complaint, the Court liberally construes the factual allegations. *See Northington v. Jackson*, 973 F.2d 1518, 1520-21 (10th Cir. 1992). However, a pro se plaintiff's pleadings are judged by the same legal standards that apply to all litigants and a pro se plaintiff must abide by the applicable rules of court. *Ogden v. San Juan County,* 32 F.3d 452, 455 (10th Cir. 1994). The Court is not obligated to craft legal theories for the plaintiff or to supply factual allegations to support the plaintiff's claims. Nor may the Court assume the role of advocate for the pro se litigant. *Hall v. Bellmon,* 935 F.2d at 1110.

In deciding whether to dismiss the complaint, in whole or in part, the Court is to consider whether to allow plaintiff an opportunity to amend the complaint. Pro se plaintiffs should be given a reasonable opportunity to remedy defects in their pleadings. *Reynoldson v. Shillinger,* 907 F.2d 124, 126 (10th Cir. 1990). The opportunity to amend should be granted unless amendment would be futile. *Hall v. Bellmon,* 935 F.2d at 1109. An amendment is futile if the amended claims would also be subject to immediate dismissal under the rule 12(b)(6) or § 1915(e)(2)(B) standards. *Bradley v. Val-Mejias,* 379 F.3d 892, 901 (10th Cir. 2004).

Inmates in correctional facilities do have a Fourth Amendment constitutional right to be free of unreasonable searches and seizures. However, not all strip searches are unconstitutional. *Foote v. Spiegel*, 118 F.3d 1416, 1425 (10th Cir. 1997). A policy or practice of strip searching prisoners before allowing them into general population areas of a detention facility, even without reasonable suspicion to believe that they may be concealing contraband, is constitutionally permissible. A practice impinging on an inmate's constitutional rights will be upheld where it is reasonably related to legitimate penological interests. *Turner v. Safley,* 482 U.S. 78, 89 (1987). The Constitution protects against only unreasonable searches designed to harass or intimidate. *Bell v. Wolfish,* 441 U.S. 520, 559-60 (1979).

The obvious security concerns inherent in a situation where the inmate will be in the general prison population areas are obvious. *Archuleta v. Wagner,* 523 F.3d 1278, 1284 (10th Cir.2008). Maintaining safety and order at detention centers is reasonably related to legitimate penological interests and requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to problems. *Turner v. Safley,* 482 U.S. at 89. Therefore, a strip search is constitutionally permissible so long as the strip search is no more intrusive than the one the Supreme Court upheld in *Bell v. Wolfish,* 441 U.S. at 558. *See Powell v. Barrett*, 541 F.3d 1298 (11th Cir. 2008).

The Supreme Court, in *Bell v. Wolfish,* upheld a rule requiring pretrial detainees in federal correctional facilities "to expose their body cavities for visual inspection as a part of a strip search conducted after every contact visit with a person from outside the institution[s]," deferring to the judgment of correctional officials that the inspections served not only to discover but also to deter the smuggling of weapons, drugs, and other prohibited items. 441 U.S. at 558. *See, also, Block v. Rutherford,* 468 U.S. 576, 586–587 (1984). Correctional officials must be

permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities. *Hudson v. Palmer,* 468 U.S. 517, 522–523 (1984); *Block, supra,* at 584–585; *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 328-29 (2012). A reasonable visual body cavity search of a pretrial detainee without probable cause does not violate the Fourth Amendment. *Bell v. Wolfish,* 441 U.S. at 558-560.

The rights of prisoners are not violated by a policy or practice of strip searching them, provided that the searches are no more intrusive on privacy interests than those upheld in the *Bell* case, and the searches are not conducted in an abusive manner. *Bull v. City and County of San Francisco*, 595 F.3d 964, 980-81 (9th Cir. 2010); *Powell,* 541 F. 3d at 1314. Nor is complete privacy required before a search will be deemed constitutional permissible. *See, Daughtrey v. Harris,* 476 F.2d 292 (10th Cir. 1973). Complaints of suffering "emotional distress" and "total embarrassment" from the strip search, alone, do not support a cognizable claim because visual body searches, alone, even if humiliating and embarrassing, do not violate the Constitution. *Millhouse v. Arbasak,* 373 Fed. App'x 135, 137 (3d Cir.2010); *Brown v. Blaine,* 185 Fed. App'x 166, 169–70 (3rd Cir. 2006).

In his Complaint, Plaintiff Smith claims that his Fourth and Eighth Amendment constitutional rights have been violated by strip searches conducted in September, 2016, at the Torrance County Detention Facility. (Doc. 1 at 11). Smith contends the strip searches violated his privacy rights because they were conducted in his segregation cell in front of his cellmate and were watched by correctional officers. (Doc. 1 at 9-15). Plaintiff Smith names, as Defendants, Warden Chad Miller, Chief of Security Bradshaw, Lieutenant Kilebrew, Sargent Kadera, Correctional Officers Quintana, Austin, Crispel, Chavez, D. Sanchez, Mendenhall, and Huron, and Corrections Corp. of America. (Doc. 1 at 2-7).

The allegations against Warden Miller and Chief of Security Bradshaw are as follows:

> "Chief of Security Bradshaw with the approval of the Warden Chad Miller have printed out a memo to enforce the strip searches in our cells in front of our cellmates. This also forces senior and supervising floor officers to conduct the unreasonable searches and order lower ranking officers to carry out these procedures."

(Doc. 1 at 9). With respect to Lieutenant Kilebrew and the Defendant Correctional Officers, Smith alleges:

> "Lieutenant Kilebrew have conducted the searches and ordered staff under his supervision to conduct the searches as he watched, making a total of 4 people including me also a group setting by this action.
>
> I have been strip searched by each one of these correctional officer Lieutenant Kilebrew, C/O Quintana, C/O Austin, C/O Crispel, C/O Sanchez, C/O Chaves. C/Os have either conducted and watched or watched as it was being conducted. Also each one has denied my privacy and have done nothing to stop one another from these violations from occuring. . .
>
> I was stripped searched in front of my cellmate. My cellmate was stripped searched in front of me. The strip searches was conducted by C/O Chavez, C/O Austin, C/O Crispel, C/O Sanchez, C/O Quintana, C/O Mendenhall, C/O Huron."

(Doc. 1 at 9, 12). There are no factual allegations in the Complaint against Defendant Kadera.

Plaintiff Smith further contends:

> "Ive suffered mental distress, and emotional stress and physical injury from the experience. I was humiliated and embarrassed especially because Im handicap. There are some things about my body I dont want any one to know about. My dignity have been stripped from me."

(Doc. 1 at 12).

Attachments to Smith's Complaint indicate that, during the time of the events in question, he was a convicted sex offender housed in a segregated Special Management Unit ("SMU") at the Torrance County Detention Facility. (Doc. 1-1 at 30, 41). Corrections Corporation of

America ("CCA"), which operated the Torrance County Detention Facility, had a policy in place for the SMU that "strip searches will be conducted on every resident that exits their cell regardless of their destination." (Doc. 1-1 at 41). Strip searches of segregation inmates prior to removal from their cells for any out-of-cell activity was standard CCA policy:

> It is done to maximize protection of staff, as well as other inmates whom may be under escort at the time. Inmates confined to segregation are housed on that status for several varying reasons , with the underlying similarity that their placement in general population poses a risk to the safety and security of the facility, themselves, or other inmates. As such, all mitigating measures should be taken to minimize the risk to the safety of all persons. It is in this spirit that this policy and procedure are in place."

(Doc. 1-1 at 51). The strip searches were conducted in an inmate's cell to see if potentially dangerous contraband is on the inmate's person prior to removal. Cellmates, when present, were not forced to watch the strip search and were directed to turn around, comparable to actions inmates take when using the cell toilet with the cellmate present. (Doc. 1-1 at 51-52).

Smith does not allege that he was subjected to intrusive body cavity searches or that the visual strip searches were conducted in an unreasonably intrusive or abusive manner. His claims that his privacy was invaded because his cellmate and correctional officers were present when the searches were conducted, alone, does not establish a "group" context for the searches or constitutionally unreasonable conduct on the part of any Defendant official. *Bell v. Wolfish,* 441 U.S. at 559-60; *Daughtrey*, 476 F.2d at 294. Smith's allegations of humiliation and embarrassment do not state a Fourth Amendment claim for relief against any individual officer. *Archuleta* 523 F.3d at 1284; *Bull v. City and County of San Francisco*, 595 F.3d at 980-8; *Powell,* 541 F. 3d at 1314.

Nor do the allegations of the Complaint state a claim for relief against Corrections Corp. of America. A civil rights action against a public entity may not be based solely on a theory of respondeat superior liability for the actions of employees. A plaintiff must plead that each government official, through the official's own individual actions, has violated the Constitution. *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009). Plaintiff must allege some personal involvement by an identified official in the alleged constitutional violation to succeed under § 1983. *Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008). Because Smith's Complaint does not allege any actions constituting a constitutional violation by an individual official, there can be no vicarious liability on the part of Corrections Corp. of America for those actions. *Iqbal,* 556 U.S. at 676.

Plaintiff Cartrell Smith's allegations do not state a claim for relief and will be dismissed under 28 U.S.C. § 1915(e)(2)(B). The Court will also deny Plaintiff Smith leave to amend his Complaint. Although prisoners should generally be given an opportunity to remedy defects in their pleadings, the extensive record submitted by Plaintiff Smith with his Complaint does not indicate any conduct sufficient to show a constitutionally unreasonable search by any Defendant. Moreover, to the extent he seeks injunctive relief, Smith is no longer incarcerated at the Torrance County Detention Facility. Allowing Plaintiff Smith an opportunity to amend would be futile. *Hall v. Bellmon,* 935 F.2d at 1109; *Bradley v. Val-Mejias,* 379 F.3d at 901.

In addition to failing to state a claim for relief, the Court will dismiss Plaintiff Smith's claims for failure to comply with the Court's Order. The Court issued an Order directing Plaintiff Smith to show cause why the case should not be dismissed within 21 days of entry of the Order. (Doc. 53). Plaintiff Smith's response to the show-cause Order was due no later than December 5, 2017. Although Smith left a message on the Court's inmate voicemail system on December 8, 2017, and filed a notice of change of address on December 15, 2017, those actions

were taken after the Court's deadline for responding to the show cause Order. Smith did not seek an extension of the Court's deadline, nor did he explain why his actions were untimely. The Court will also dismiss Smith's claims under Fed. R. Civ. P. 41(b) for failure to comply with the Court's Order. *Olsen v. Mapes,* 333 F.3d at 1204, n. 3.

## IV. PLAINTIFF SMITH'S PENDING MOTIONS WILL BE DENIED

Also pending before the Court are the Motion to Add Additional Statements of Claims (Doc. 25), Motion to Subpoena (Doc. 31), Motion to Add Additional Statements of Claims (Doc. 32), Motion to Direct U.S. Marshals to Serve Defendants (Doc. 57), and Motion for Severance (Doc. 62) filed by Plaintiff Smith. Plaintiff Smith's two Motions to Add Additional Statements of Claims (Doc. 25, 32) seek to supplement or amend his Complaint with duplicative arguments and additional claims that are unrelated to his original Complaint. His Motion to Subpoena, Motion to Direct U.S. Marshals to Serve Defendants, and Motion to Sever (Doc. 31, 57, 62) request service of process, discovery, and severance of his claims from those of his co-plaintiffs, Lutz and Organ. The Court will deny the pending Motions as moot in light of this order of dismissal.

**IT IS ORDERED:**

(1) The Motion to Add Additional Statements of Claims (Doc. 25), Motion to Subpoena (Doc. 31), Motion to Add Additional Statements of Claims (Doc. 32), Motion to Direct U.S. Marshals to Serve Defendants (Doc. 57), and Motion for Severance (Doc. 62) filed by Plaintiff Cartrell R. Smith, Sr. are **DENIED** as moot;

(2) The Complaint for Violation of Civil Rights (Doc. 1), amended Complaint for Violation of Civil Rights (Doc. Doc. 14), and all claims by Plaintiff Jason Lutz are **DISMISSED** under Fed. R. Civ. P. 41(b) for failure to comply with a court order and failure to prosecute; and

(3) The Complaint for Violation of Civil Rights and all claims by Plaintiff Cartrell R. Smith, Sr. (Doc. 1) are **DISMISSED** for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B) and for failure to comply with a court order under Fed. R. Civ. P. 41(b)(1).

                                                                _____
UNITED STATES DISTRICT JUDGE